### UNITED STATES v. COOMBES.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

#### No. 57.

ALIENS (§ 57*)—IMMIGRATION—OFFENSES—FAILURE TO PROVIDE PROPER MANIFEST—LIABILITY OF VESSEL MASTER.

Act Cong. Feb. 20, 1907, c. 1134, § 12, 34 Stat. 901 (U. S. Comp. St. Supp. 1911, p. 506), declares that, on the arrival of any alien by water to any port of the United States, the commanding officer of the vessel shall deliver to the immigration officer at the port of arrival lists or manifests, made at the time and place of embarkation, which shall answer certain questions as to the sex of the alien, whether he is married or single, whether he has ever been in the United States before, or in a prison or almshouse, whether he is a polygamist, or an anarchist, or whether he is coming by reason of an agreement to labor, etc. Section 15 subjects masters bringing in aliens who fail to deliver manifest to a penalty of $10 for each alien concerning whom the above information is not contained in a list as required, while masters taking out aliens are only subjected to a penalty of $10 for failing "without good cause" to deliver the list for each alien not included therein. *Held*, that the statute was mandatory, in so far as it required that the manifest be filled up at the port of embarkation, and that a master failing to comply therewith was liable, notwithstanding the blanks were filled after arrival at the port of destination.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 114; Dec. Dig. § 57.*]

Appeal from the District Court of the United States for the Eastern District of New York; Van Vechten Veeder, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Information by the United States against Philip Coombes. Judgment for the United States, and defendant appeals. Affirmed.

Niebrugge & Maxfield, of New York City (William P. Niebrugge and Berton L. Maxfield, both of New York City, on the brief), for appellant.

William J. Youngs, U. S. Atty., and L. R. Bick, Asst. U. S. Atty., both of Brooklyn, N. Y. (William Porter Allen, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The United States Attorney filed an information against Philip Coombes, master of the steamer Romney, for failure to fill up at Santos, Brazil, the list or manifest of aliens there taken on board, as required by section 12 of the Act of February 20, 1907 (34 Stat. 901, c. 1134 [U. S. Comp. St. Supp. 1911, p. 506]). The answer of the defendant was to the effect that the list or manifest had been completely or substantially filled up before it was verified by the master and delivered to the immigration officer at the port of New York. Trial by jury being waived, the District Judge entered judgment against the defendant for $270, being $10 for each of 27 aliens as to whom the list or manifest was not filled up at Santos with all the required information.

Section 12 of the Act provides:

"That upon the arrival of any alien by water at any port of the United States it shall be the duty of the master or commanding officer of the steamer, sailing or other vessel having said alien on board to deliver to the immigration officer at the port of arrival lists or manifests made at the time and place of embarkation of said alien on board said steamer or vessel which shall in answer to questions at the top of said list state. * * *"

Then follow some 22 subjects upon which information is required, principally concerning the alien's eligibility to admission into the United States. The section then goes on to provide that, in case of masters of vessels taking alien passengers out of the United States, lists of such alien passengers shall be filed with the collector before departure containing very brief information.

Section 15, which regulates the penalties, subjects masters of vessels bringing aliens into the United States who fail to deliver manifests of all aliens aboard to a penalty of $10 "for each alien concerning whom the above information is not contained in any list as aforesaid," whereas masters of vessels taking alien passengers out of the United States are subjected to a penalty of $10 only if they "without good cause" fail to deliver the list "for each alien not included in said list; but in no case shall the aggregate fine exceed one hundred dollars."

It appears that the chief steward filled up at Santos a form of manifest furnished by the Department of Commerce and Labor; but, there being some things which he said he did not understand, he left certain blank spaces to be filled up after arrival at this port. Upon arrival he consulted the immigration official, who obtained the required information from the aliens, and filled up the manifest, which the master then verified and delivered to the immigration official. The spaces left blank

were intended for answers to questions which it is difficult to see how the chief steward could not understand: (4) What sex? (5) Married or single? (17) Ever been in the United States before? (19) Ever been in prison or almshouse? (20) Whether a polygamist? (21) Whether an anarchist? (22) Whether coming by reason of agreement to labor, etc.

The question raised is whether the requirement of the act that the manifest shall be filled up at the port of embarkation is mandatory or directory. The words, being precise and unambiguous, should be enforced according to their plain meaning. Consideration of sections 12 and 15 shows that Congress had a definite scheme in mind, which it used appropriate words to express. It distinguished very clearly between the requirements imposed upon masters of vessels bringing aliens into the United States and those imposed upon masters of vessels taking alien passengers out of the United States. It distinguished clearly between the penalties to be imposed in the two cases. Lists of all aliens coming into the country were to be furnished, containing information especially concerning their right to admission. On the other hand, lists of alien passengers only going out of the country with very little information were required. Masters of vessels bringing in aliens, who failed to comply with the act, were subjected to a penalty for each alien "concerning whom the above information is not contained in any list as aforesaid." But masters of vessels taking alien passengers out of the United States were subjected only if they failed "without good cause" to deliver the list, to a penalty of $10 "for each alien not included in said list," the fine in no case to exceed $100. All this shows the plain intention to be more stringent in the case of aliens coming into, than of alien passengers going out of, the United States.

If we have a right to look into the reasonableness of the requirement under consideration, it seems to us entirely so. Alien immigrants are more likely to answer the questions accurately when they embark than they are at the end of a voyage, which gives them an opportunity to advise each other of the various causes which will prevent their admission into the United States. Besides, it is fairer to advise them of their disabilities, if any, at the port of embarkation, so that they may be saved a useless voyage, if they are ineligible. Hard cases may be imagined as the result of this construction of the act. But the master is not a guarantor of the correctness of the answers which he fills into the blanks. He performs his whole duty if he fills them in accordance with what he can see himself and with the information given him by the alien.

The judgment is affirmed.